On Rehearing.
Statement of the Case.
MONROE, J.
[1] Plaintiff, being a little more than 19 years of age, had his right hand severed from his arm by a cut-off saw, which he was operating whilst in defendant’s employ, and he attributes his injury to defendant’s negligence, and prays for damages. Defendant pleads contributory negligence, assumption of risk, and fault on the part of a fellow servant; and it has appealed from an adverse judgment for $10,000. The story of the accident, as told by the witnesses, is substantially as follows: Plaintiff was operating a cut-off saw, his position being in front of, and facing, the saw, to which he fed the slab that he was cutting, with his left hand, whilst he pulled the saw towards him, and against the slab, with his right hand, by means of a lever, which was attached to the frame to which the saw was fastened and which projected through the table, or roller bed, upon the right and above the level of the upper edge of the saw. When the slab was cut through, he would push the lever from him, and the saw would be carried into a box, or casing, which ordinarily served as a protection to the operator and to passers-by; but it appears that at the time of the accident an iron lever, which belonged to the machine and which was curved in such a way as to furnish a convenient handle whereby the operator could move the saw backward and forward, and yet keep his. hand and arm in a comparatively safe position, had been broken, and that there had been substituted for it a straight piece of scantling (say 2x2 or 2x4), the hold upon which was less secure and placed the hand and arm of the operator in a position where, in the event of an accident such as happened, they were more likely to be injured. The accident consisted of plaintiff’s being struck upon his right arm by a strip (of wood) which a young man by the name of Upshur had pulled from a nearby “edger” table, and which it was his business to throw into a conveyer trough, behind him, but which he carelessly threw against plaintiff’s arm, knocking it against the saw, just as plaintiff was in the act of pulling the saw forward, with the result that plaintiff’s right hand was cut off. Another unusual condition was that, for the accommodation of the substitute wooden lever, the top of the box or casing, from which plaintiff was pulling the saw, had been knocked off, so that the saw was more exposed than it would have been if the iron lever had been in use.
It is shown that Upshur had been employed by defendant for three days (or nights, as he and plaintiff were working on the night shifts), and that plaintiff had seen him at work on the night before that upon which the accident occurred, and had observed that he handled the strips that it was his business to remove from the edger table rather carelessly. It is also shown that immediately after the accident defendant caused the iron lever to be replaced and the easing of the saw to be repaired.
Opinion.
Our conclusions from the whole testimony are that save for the blow upon plaintiff’s *903 arm from tlie strip thrown.by Upshur there would have been no accident, and that even with the blow there would probably have been none, if the equipment of the saw had been in its usual and proper condition. We find that defendant was negligent in employing Upshur and in allowing the saw to be operated whilst the equipment was out of repair. We fail to find that Upshur was the fellow servant of plaintiff within any rule that has been recognized by this court, since the work that he was doing had no connection with that which plaintiff was doing. And we fail to find that plaintiff was guilty of any negligence that contributed to the accident, or that he assumed the risk of Upshur’s negligence, or of the negligence of defendant in failing to furnish him with reasonably safe appliances and a reasonably safe place with and in which to do the work for which he was employed.
[2] We are given to understand through ■the briefs of the counsel (and there is some evidence to that effect in ■ other proceedings before this court) that the defendant company has been placed in the hands of a receiver; that it is paying; 10 cents on the dollar to its creditors; and that $1,020 has been set aside to meet this claim — from which it is argued that the judgment for $10,000 in favor of plaintiff should be affirmed, even though in itself it should be considered excessive, as he will, in no event, realize more than the $1,020, and will get less than that in proportion as the amount allowed by the district court may be reduced. The situation is deplorable, but we cannot meet the difficulty in the manner suggested. All that we are authorized to do in this ease is to determine the amount to which plaintiff is entitled. Whether he will be able to realize that amount upon the execution of his judgment is altogether another matter. We are of opinion that the amount awarded by the district court should be reduced, but we think, in view of the decrease within the past few years in the purchasing power of money, that we are justified in allowing in a case of this kind as much as $7,500. Summers v. Crescent City R. R. Co., 34 La. Ann. 139, 44 Am. Rep. 419; Peniston v. Railroad Co., 34 La. Ann. 777, 44 Am. Rep. 444; Davis v. Railway Co., 106 La. 81, 30 South. 250; Dyer v. Reiley & Leathers, 28 La. Ann. 6; Nelson v. Railway Co., 49 La. Ann. 491, 21 South. 635; Ketchum v. Railway Co., 38 La. Ann. 777.
It is therefore ordered, adjudged, and decreed that the amount awarded by the district court be reduced to $7,500, and that, as thus amended, the judgment appealed from be affirmed, the costs of the appeal to be paid by plaintiff.